SCHLEGEL *v.* STATE OF INDIANA

[No. 28,522.   Filed April 3, 1950.]

*Lewis A. Lee, Lawrence H. Robbins* and *John B. Staggenburg,* all of Anderson, for appellant.

*J. Emmett McManamon,* Attorney General; *Merl M. Wall* and *Charles F. O'Connor,* Deputy Attorneys General, for appellee.

EMMERT, J.—This is an appeal from a judgment on a verdict finding the appellant guilty of grand larceny as charged in the affidavit upon which he was prosecuted. He claims error in that the verdict is not sustained by sufficient evidence and is contrary to law. He was tried for the theft of a cow owned by John W. Bergdoll (hereinafter referred to as the own-

er), who resided on his 52 acre farm immediately north of State Road No. 67, in Jay County, Indiana.

After a conviction, on appeal we must consider the evidence most favorable to the State to support the verdict or decision of the trial court. *Straw* v. *State* (1925), 197 Ind. 606, 149 N. E. 430, 151 N. E. 695; *Smith* v. *State* (1942), 219 Ind. 533, 39 N. E. 2d 472; *Swope* v. *State* (1942), 220 Ind. 40, 39 N. E. 2d 947. In reviewing the evidence, we follow the rule that we do not determine the credibility of the witnesses, since that is a matter for the determination of the trier of the facts in the trial court. *Straw* v. *State* (1925), 197 Ind. 606, 149 N. E. 430, 151 N. E. 695, *supra; Walker* v. *State* (1934), 206 Ind. 232, 189 N. E. 127; *Smith* v. *State* (1942), 219 Ind. 533, 39 N. E. 2d 742, *supra.* When the record is examined in the light of these well recognized principles, the jury was warranted in finding the facts as follows:

The evening of April 7, 1947, the owner and his son milked seven cows on his farm, at which time the cow, which was stolen, was in the barn. Next morning she was missing, and there were tracks in the soft ground going from the barn through three fences, one of which had been cut, to an abandoned part of old State Road No. 67, just north of the present road, where there were other tracks left by an automobile and a two-wheel trailer. At this place the cow had been loaded into the trailer and there were many tracks showing the cow had struggled and jumped around. From this place other tracks led back toward the barn where she had attempted to return to the barn before being returned to the loading place. At the loading place there were found small bits of broken rope, some broken boards, some fresh corn cobs and some hair the same color of the stolen cow. Beside

the cow tracks there were tracks made by some man accompanying her. One of the rear wheels of the car, as revealed by its imprints, had a military type tread and the state police took photographs of this. The corn cobs, broken boards and the rope at the loading place were taken by the officers making the investigation.

About daylight the morning of Tuesday, April 8, two of the neighbors saw a car of the general description of the one owned by the appellant on the highway, pulling a trailer in which was a large cow. At the time one of the neighbors saw the cow being transported, the automobile had one tire down and was driving slowly. The following Saturday, which was April 12, the sheriff of Jay County, in company with a member of the state police force, went to the appellant's home, where they examined his automobile and the two-wheel trailer, the ownership of which was admitted by appellant. The car had a hitch for coupling to the trailer. There was a tire with a military type tread, similar to the tread on the car at the loading place, in the coal bin. The tire had a hole in it where it had blown out. There were corn cobs in the trailer, similar to some of the cobs left at the loading place. The officers were in the barnyard about 10 or 15 minutes before appellant, who was working about 40 feet away, came over to the officers. The appellant admitted the tire was his, and said that he had had a flat tire on State Road No. 67 near the Bergdoll place and had changed the tire there; that a man named "Sparky," who lived around Springport, south of Muncie, came along when he had the tire trouble, and looked over at Bergdoll's cows and said he would like to have a cow like one of them. An investigation by the police officers failed to locate anyone by the name of "Sparky" near Springport or any other place.

The officers went back the following Monday and the appellant went into the house and refused to come out. The endgate of the trailer had been recently repaired. The officers took off the boards of the endgate, some of which had been recently broken, and they fitted other broken boards which were found at the loading place. These were admitted in evidence and exhibited to the jury at the trial.

At the time appellant was arrested and placed in jail, he stated to a member of the state police force in answer to questions about the tail gate, "If you fellows are so damn smart, why don't you find out?" During the time the appellant was in jail, the sheriff asked him where he was going with the cow early about a week ago, and appellant answered that he had a friend's cow but had no place to keep her, and was taking her home to one H. C. Uhrick, who lived about a mile south of Winchester. Investigation in this neighborhood failed to locate any man by the name of Uhrick. During the time he was in jail, the jailer asked appellant why he didn't burn the endgate and he would not have any evidence against him, and the appellant answered, "I never thought of that." The officers made an extensive investigation, which extended into Ohio, in an attempt to recover the cow, but she was never located.

"It is the law that 'where the evidence, either direct or circumstantial, is such that two inferences may reasonably be drawn therefrom, one of guilt and one of innocence, it is not within the province of the Supreme Court to determine which inference should have controlled, that being exclusively for the jury, or for the trial court.' *Winters* v. *State* (1928), 200 Ind. 48, 160 N. E. 294. See also *Warner* v. *State* (1931), 202 Ind. 479, 175 N. E. 661." *Butler* v. *State* (1945), 223 Ind. 260, 263, 60 N. E. 2d

137. There was ample evidence to justify the jury in returning the verdict of guilty.

There is no merit in appellant's contention that there was a fatal variance between the description of the property stolen and the evidence given in the trial. The affidavit is not in the intrinsic record, but assuming that the court's instruction No. 1, which purported to state the affidavit in full, is correct, it charged appellant did "feloniously take, steal and carry away of the goods and chattels of one J. W. Bergdoll one guernsey eight year old cow. . . ." The owner's son described the cow as "a large cow, guernsey color, spotted, as much white as guernsey." She had "large horns." The owner testified she was "eight or nine years old. She had long horns and color was white and guernsey red." This evidence sustained the allegation as to the cow. The verdict was sustained by sufficient evidence, and was not contrary to law.

Judgment affirmed.

NOTE.—Reported in 91 N. E. 2d 167.